UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| David Frasier, #165572, | ) | C/A No. 4:12-1596-MGL-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Officer Frankie Littles, sued in his individual | ) | |
| capacity; Lt. Brayboy, sued in his individual | ) | |
| capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## I. PROCEDURAL BACKGROUND

The Plaintiff, David Frasier, proceeding *pro se*, filed this action under 42 U.S.C. § 1983[1] on

June 14, 2012. Plaintiff is a prisoner in the custody of the South Carolina Department of Corrections

and housed at the Evans Correctional Institution in Bennettsville, South Carolina. Defendants filed

a motion for summary judgment. (Doc. #42). Because Plaintiff is proceeding *pro se*, he was advised

on or about March 6, 2013, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a

failure to respond to the Defendants' motion for summary judgment could result in dismissal of his

complaint. The Plaintiff filed a response in opposition on April 15, 2013. (Doc. #46).

_____

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the
provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this
is a dispositive motion, the report and recommendation is entered for review by the District Judge.

## II.  DISCUSSION

### A.  STANDARD FOR SUMMARY JUDGMENT

The federal court is charged with liberally construing the complaints filed by pro se litigants,

to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972);

Haines v. Kerner, 404 U.S. 519 (1972).  The court's function, however, is not to decide issues of

fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal

construction does not mean that the court can ignore a clear failure in the pleadings to allege facts

which set forth a federal claim,  Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor

can the court  assume the existence of a genuine issue of material fact where none exists.   If none

can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).

The moving party bears the burden of showing that summary judgment is proper.  Summary

judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to

judgment as a matter of law.  Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Summary judgment is proper if the non-moving party fails to establish an essential element of any

cause of action upon which the non-moving party has the burden of proof.  Celotex, 477 U.S. 317.

Once the moving party has brought into question whether there is a genuine dispute for trial on a

material element of the non-moving party's claims, the non-moving party bears the burden of

coming forward with specific facts which show a genuine dispute for trial.  Fed.R.Civ.P. 56(e);

Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).  The non-

moving party must come forward with enough evidence, beyond a mere scintilla, upon which the

fact finder could reasonably find for it.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48

(1986).  The facts and inferences to be drawn therefrom must be viewed in the light most favorable

to the non-moving party.  Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991).  However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment.  Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992).  The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits."  Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings.  See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves).  Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with . . . affidavits, if any."  Id. at 322; see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## B.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

Defendants argue that the complaint should be dismissed because the Plaintiff failed to exhaust his administrative remedies prior to filing the instant lawsuit. Plaintiff responded in opposition stating that he filed all grievances in a timely manner and there is nothing he can do if the prison refuses to respond. (Response, doc. #46).

The Defendants have the burden of showing that Plaintiff failed to exhaust his administrative remedies. See Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 683 (4th Cir.2005) (inmate's failure to exhaust administrative remedies is an affirmative defense to be both

pled and proven by the Defendant); Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 166 L.Ed.2d 798

(2007). To meet this burden, the Defendants submitted an affidavit from Ann Hallman, Chief of the

Inmate Grievance Branch of the SCDC, with attached exhibits consisting of Plaintiff's grievance

forms. Ann Hallman attests she is employed with the SCDC as the Inmate Grievance Branch chief.

(Hallman affidavit, doc. #42-2). Hallman asserts Plaintiff filed a Step One grievance, Grievance

#ECI 0998-11, regarding the alleged incident in his complaint. Id. The grievance was returned to

Plaintiff indicating he is required to make an effort to informally resolve his issue/concern. Id.

Plaintiff was given an opportunity to submit a Step Two Grievance Form within five days from

receipt of the Warden's response to the Step One Grievance Form. Id. Plaintiff submitted a Step Two

Grievance Form with respect to this incident on September 28, 2011. Id. Hallman attests that this

Grievance #ECI 0998-11 is at the Central Office pending a response. Id. Thus, Hallman attests

Plaintiff has not exhausted his administrative remedies with respect to this grievance. Id.

Pursuant to 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison

conditions under section 1983 of this Title, or any other federal law, by a prisoner confined in any

jail, prison, or other correctional facility until such administrative remedies as are available are

exhausted." Through the enactment of this statute, "Congress has mandated exhaustion clearly

enough, regardless of the relief offered through administrative procedures." Booth v. Churner, 532

U.S. 731, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001); see Porter v. Nussle, 534 U.S. 516, 122

S.Ct. 983, 152 L.Ed.2d 12 (2002); Larkin v. Galloway, 266 F.3 d 718 (7th Cir.2001) [exhaustion

required even though plaintiff claimed he was afraid]; see also Claybrooks v. Newsome, No.

00–7079, 2001 WL 1089548 (4th Cir. Sept.18, 2001) (unpublished opinion) [applying Booth v.

Churner to affirm district court's denial of relief to plaintiff]. Accordingly, before Plaintiff may

proceed on his claim in this Court, he must first have exhausted the administrative remedies that were available to him at the prison.

This Court can take judicial notice from previous cases filed in this Court with relation to the SCDC grievance process. It is well settled that "a SCDC prisoner must wait approximately 114 days from presenting his Step 1 Grievance to the prison to file a complaint in federal court." Malik v. Ward, 2010 WL 936777, at*3 (D.S.C. March 16, 2010).[2] Courts in this district have held that "[w]hen a prisoner files a grievance and has not received a timely determination, the grievance may be considered exhausted under the PLRA." Williams v. Loyd, C/A No. 2:09–2289–JFA–RSC, 2010 WL 3609790, at *4 (D.S.C. Apr.28, 2010) (collecting cases holding that administrative remedies are deemed exhausted when prison officials fail to timely respond to a properly filed grievance), Report and Recommendation adopted by 2010 WL 3609512 (D.S.C. Sept.13, 2010).

In this case, prison officials have failed to timely respond to Plaintiff's Step Two grievance. This case was filed on June 14, 2012, almost nine months after the Step Two Grievance was

---

[2] "The court may take judicial notice of the SCDC grievance process, specifically, SCDC Policy GA–01.12." Malik, 2010 WL 936777, at *2 n. 4. As noted in Jones v. Kay, 2007 WL 4292416 (D.S.C. Dec. 5, 2007), the time limits of this policy are summarized as follows:

(1) an inmate must fill out a Form 10–5 (Step 1 Grievance) to explain his complaint and give the form to an employee designated by the Warden within fifteen (15) days of the alleged incident;
(2) the Warden designee has nine (9) working days from the time the grievance is presented to put it into SCDC's automated system;
(3) the Warden should respond to the grievance in writing within forty (40) days;
(4) the inmate may appeal by completing a Form 10–5a (Step 2 Appeal) and submitting it to the Inmate Grievance Coordinator within five (5) calendar days of receipt of the response; and
(5) a responsible SCDC official will have sixty (60) days to respond to the Step 2 Grievance plus five (5) days for the grievance to be served.

submitted on September 28, 2011. Pursuant to Hallman's affidavit, Plaintiff's grievance was still pending as of January 30, 2013. Accordingly, it is recommended that Defendants' motion for summary judgment for failure to exhaust be denied.

## C. ARGUMENT OF PARTIES/ANALYSIS

Plaintiff alleges Defendants violated his constitutional rights alleging deliberate indifference to a serious medical need. Specifically, Plaintiff asserts that Defendants, two officers at ECI, interfered with, and delayed, his medical care by failing to give him an incident report to go to the medical department as he requested. Plaintiff contends that he suffers from a serious heart condition that requires twenty-four hour medical watch. Plaintiff states that on the date and time that he was to see the doctor at the prison, the doctor did not come to work. Plaintiff asserts that he was told that if he still needed medical attention, he should go back to his housing unit and request an incident report to report to medical. Plaintiff avers that he was very sick and weak having to engage the assistance of other inmates to make it back to his dorm. Plaintiff alleges that he asked Defendant Little for an incident report to receive medical care because he had heart trouble and was short of breath and ill. Plaintiff contends that Defendant Little said he would write a report but later told Plaintiff that he did not write it because Lt. Brayboy instructed him not to. Plaintiff asserts Defendant Little told him Lt. Brayboy instructed him to give Plaintiff some Maylox and to tell him to rest. Plaintiff asserts that he thought he was going to die but at 2:00 a.m. when they announced sick call, he was helped to medical. Plaintiff alleges that he was examined by the nurse who concluded he was having heart failure and, upon calling the doctor, was immediately sent to the hospital. Therefore, Plaintiff alleges Defendants prevented him from obtaining an appointment with

6

medical while he was suffering heart failure even though he was under twenty-four hour medical watch. Plaintiff seeks monetary damages.

Defendants argue they are entitled to summary judgment because the Plaintiff failed to exhaust his administrative remedies, and that they are entitled to qualified immunity and Eleventh Amendment immunity. Defendants submitted the affidavit of Officer Freddie Little who attests he is employed with the South Carolina Department of Corrections (SCDC) as a Corrections Officer and was assigned as a dorm officer at ECI where Plaintiff was housed. (Little affidavit, doc. #42-3). Little has no independent recollection of the facts and circumstances surrounding Plaintiff's allegations due to the age of the alleged incident and the number of inmates that attempt to be seen by medical staff on a daily basis. Id. As a dorm officer, numerous inmates request an incident report from Little to go to the medical department and all such requests must be approved by the shift supervisor. Id. When an inmate requests an incident report allowing him to report to the medical department, Little relays the information to the shift supervisor. Id. If an inmate appears to have a legitimate medical issue that may need emergency attention, an incident report is typically provided for the inmates. Id. However, inmates will frequently attempt to go to medical for various issues as an attempt to get out of their cell. Id. Little attests that he has no recollection of Plaintiff's specific complaints of requesting an incident report in July 2011 and does not recall any circumstances wherein Plaintiff appeared to present with any condition that would necessitate immediate medical attention. Id.

Defendants submitted the affidavit of Lt. Ronald S. Brayboy who attests he is employed with the SCDC as Corrections Officer holding the rank of Lieutenant. (Brayboy affidavit, doc. # 42-4). In July 2011, and at all times relevant to Plaintiff's allegations, Brayboy was a shift lieutenant in

charge of supervising the A-1 day shift. Id. Brayboy has no independent recollection of the facts and circumstances surrounding Plaintiff's allegations including Plaintiff's allegation that he told Officer Little not to write an incident report for Plaintiff to go to the medical department. Id. As the shift supervisor, Brayboy was responsible for approving any request by inmates that present to the dorm officer for an incident report to go to the medical department. Id. The requests are typically granted only in situations where there appears to be a medical need whereby the inmate requires immediate medical attention. Id. The reason for the limitation is because inmates frequently attempt to go to medical for non-emergent situations merely to get out of their cell. Id. Brayboy does not recall having any specific discussion with Officer Little concerning Plaintiff that would have alerted him to the fact Plaintiff would have needed an incident report to go to medical for emergency medical treatment. Id.

In support of their motion for summary judgment, the Defendants submitted the affidavit of Tonnie Spivey (Spivey) and SCDC's medical summary records for the Plaintiff. Spivey attests that she is employed with the SCDC as a nurse assigned to ECI. (Spivey affidavit, doc.#42-5). Spivey is familiar with the Plaintiff's allegations and has reviewed Plaintiff's medical records with regard to his allegations. Id. With regard to Plaintiff's allegation that he had a scheduled appointment to see the doctor on July 7, 2011, Plaintiff is correct for he had an appointment to see the doctor for a chest cold. Id. However, appointments for that day were cancelled as Dr. Drago was unavailable to see patients. Id. All inmates with appointments on July 7, 2011, were informed that Dr. Drago's appointments had been cancelled and they would be rescheduled at which time inmates would have been instructed to return to their dorm. Id. In the event an inmate needed to be seen in the medical department outside of regular sick call times, the inmate would have needed an incident report from

his dorm officer. Id. Despite the fact that inmates frequently attempt to obtain incident reports to get out of their cell, these incident reports are commonly given to inmates to be seen in the medical department. Id. Spivey does not have any knowledge concerning Plaintiff's allegation that he attempted to obtain an incident report from Little and not allowed by Lt. Brayboy. Id. In her opinion, Spivey asserts that had Plaintiff presented his dorm officer with a legitimate medical need to be seen by the medical department, an incident report would have ben given. Id. Spivey attached Plaintiff's medical records from January 7, 2011, to October 12, 2012, which indicate Plaintiff was not seen in the medical department for approximately two weeks prior to July 7, 2011, for any medical conditions. Id. Additionally, there are no records maintained by the ECI Medical Department indicating that Plaintiff presented to medical on July 7, 2011, for any condition other than the chest cold for which he had a scheduled follow-up appointment with Dr. Drago due to his encounter with the medical department two weeks prior and was a non-emergent situation. Id.

Based on the medical records submitted, Plaintiff was seen in medical on July 8, 2011, complaining of a tightness in his chest and trouble breathing. The nurse paged the doctor who gave orders to send Plaintiff to the ER for evaluation. It is noted in the medical summary that "arrangements made for him to go by van as he stated this has been going on for awhile although today was his worst day." (Doc. #42-5, p. 32). The medical summary reveals Plaintiff was released from the hospital on July 11, 2011, and returned to ECI with recommendations for a cardiac diet and activity as tolerated. (Doc.# 42-5, p. 36). Plaintiff submitted a couple of pages of documents from Marlboro Park Hospital along with his response in opposition. (Doc. # 46-2). Under the document entitled History and Physical, it is noted that Plaintiff was "having cold symptoms for the last few days. He could not eat well and drink enough, hence he stopped taking his diuretic and started

having more shortness of breath and productive cough." Id. It was also noted that he denied any

chest pain. Id. It was noted that a "[d]iagnosis of heart acute congestive systolic heart failure was

entertained and subsequently admitted to the hospital for further evaluation and treatment." Id. It

was also noted under past history that Plaintiff was diagnosed with congestive heart failure in

November 2009, when he was admitted to Palmetto Richland Memorial Hospital and was being

followed by a cardiologist at ECI. Id. There were three pages of the history and physical but Plaintiff

only submitted page one. However, Plaintiff submitted a document entitled "Congestive Heart

Failure Discharge Instructions" dated July 11, 2011, from Marlboro Park Hospital with instructions

for activity as tolerated, follow a cardiac diet of low salt, low fat, and no caffeine, and to see the

facility physician in one week. (Doc. #46-2). Based on the SCDC medical records, Plaintiff was

seen by medical on June 17, 2011, due to a cold which was causing him to be short of breath. (Doc.#

42-5, p. 30). Prior to the date in question, the medical records indicate Plaintiff returned from an

outside appointment at the Columbia Heart Clinic on June 23, 2011, with recommendations on his

medicine and told to follow-up in three months. (Doc. #42-5, p. 33). There is no indication that

Plaintiff was on a "24-hour watch" for his heart as he alleged. On July 8, 2011, he was sent by van

to the hospital for evaluation as they did not deem an ambulance was necessary since he stated the

problems had been going on for a few days. In Plaintiff's Step One Grievance form submitted by

Hallman, Plaintiff stated that "[o]n July , 2011, I had a doctor appointment. It was cancel and I was

sick and feeling bad. I told Sgt. Graham, about my medical problem. She told me to tell office Little,

who was working in F2-4 Wing to write an incident report and send me back to medical to be seen."

(Quoted verbatim). (Tr. 42-2, p. 3). On a separate sheet attached to the grievances, Plaintiff asserted

that Officer Little refused to write the incident report because Lt. Brayboy told him not to write the

10

report but to tell Plaintiff to lay down. Plaintiff stated that he was a heart patient and was having problems on this day with his heart for which he told staff members. He asserts that he signed up for sick call that night, was seen, and placed in the hospital. In the Step Two Grievance form, it is noted that Plaintiff stated "This incident *may* have caused damage or death," (emphasis added). Plaintiff has not alleged that he suffered any permanent damage due to the alleged delay in treatment.

Viewed in the light most favorable to Plaintiff, the record creates no genuine issue of material fact to support his deliberate indifference claim. The Eighth Amendment prohibits prison officials from acting with deliberate indifference to a prisoner's serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). To establish deliberate indifference, an inmate must allege both that he experienced a deprivation that was "objectively sufficiently serious" and "that subjectively the officials acted with a sufficiently culpable state of mind." De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir.2003) (internal quotation marks, alteration, and emphasis omitted). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.' " Coppage v. Mann, 906 F.Supp. 1025, 1037 (E.D.Va.1995) (quoting Monmouth Co. Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir.1987), cert. denied, 450 U.S. 1041 (1981)). Alleged delays in providing adequate care also do not rise to the level of deliberate indifference where the delay does not cause further injury. Kane v. Hargis, 987 F.2d 1005, 1009 (4th Cir.1993); see also Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1188 (11th Cir.1994) ("An inmate who complains that delay in

medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed."). Plaintiff avers that Defendants refused to give him an incident report to go to medical when he told them he was sick and having heart trouble. The alleged denial of the incident report was on July 7, 2011, and he went to medical during sick call at 2:00 am on July 8, 2011, at which time he was transported to the hospital by van where he received medical care. However, Plaintiff has not shown that the alleged delay in treatment caused further injury or permanent injury or that he experienced a deprivation that was "objectively sufficiently serious" and "that subjectively the officials acted with a sufficiently culpable state of mind." De'Lonta v. Angelone, supra. Accordingly, it is recommended that summary judgment be granted in favor of Defendants on this issue.

## D. QUALIFIED IMMUNITY

Defendants deny that any of the alleged conduct or conditions complained of by Plaintiff gives rise to a constitutional violation. However, Defendants assert that, even if this Court concludes that the facts are sufficient to establish a Constitutional claim, they are entitled to qualified immunity.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

Akers v. Caperton, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether Defendant is protected by this immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, the Plaintiff fails to show that Defendants violated any of his clearly established constitutional or statutory rights. However, even if there was a violation, Defendants are entitled to qualified immunity. Thus, the undersigned recommends that summary judgment be granted as to these Defendants.

## E. ELEVENTH AMENDMENT IMMUNITY

Even though Plaintiff listed the Defendants in their individual capacity in the caption of his complaint, the Defendants contend that the Plaintiff's §1983 claims against them for money damages

in their official capacity are barred pursuant to Eleventh Amendment Immunity. Defendants also argue that the action against them should be dismissed as a matter of law to the extent that they are sued in their official capacity because while acting in their official capacity as an employee of the SCDC they are not a "person" under 42 U.S.C. §1983 and, therefore, not subject to suit.

When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state.

In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity (cites omitted) or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments and officials are entitled to the Eleventh Amendment immunity. Will, supra at 70. In reaching this conclusion, the court held that

a suit against state officials acting in their official capacities is actually against the office itself, and therefore, against the state. State officials may only be sued in their individual capacities.

There is no dispute that Defendants were/are employees of the SCDC at the time of the allegations in the complaint. Thus, if Plaintiff is attempting to bring a claim against the Defendants in their official capacity, they are entitled to Eleventh Amendment immunity from monetary damages in their official capacity.

## F. PENDENT JURISDICTION

Assuming Plaintiff's § 1983 claim is dismissed by this Court and Plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

## III. CONCLUSION

Based on the above reasoning, it is recommended that the motion for summary judgment by Defendants (docs. #42) be GRANTED and any outstanding motions be deemed MOOT.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

October 28, 2013
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**